UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KARL HAFFENREFFER, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 06-0299/T |
| | ) | |
| WILLIAM COLEMAN and | ) | |
| JANET COLEMAN, | ) | |
| Defendants | ) | |

**MEMORANDUM IN OPPOSITION**
**TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

Defendants, William Coleman and Janet Coleman, and their counsel, William R. Landry and Blish & Cavanagh LLP, submit this memorandum in opposition to plaintiff, Karl Haffenreffer's motion to disqualify counsel.

As set forth more fully below, plaintiff has overstated the purported conflict of interest issue by a wide margin. His suggestion that defendants' counsel, Blish & Cavanagh, somehow represent him in his capacity as a beneficiary of the estate of his late mother is simply untenable. The lines in the Haffenreffer family dispute - a battle between two brothers - are much more clearly drawn. The motion to disqualify appears to be calculated more to harass one of the brothers and his friends (the defendants) than it is to protect any genuine, material interests of the estate of Carolyn B. Haffenreffer - which estate *was not even in existence* at the time all the relevant events in this particular litigation occurred. Nor is the spectre of privileged, confidential information an issue. Plaintiff's own privilege log in this litigation does not include a single document created less than two years *after* all the events relevant to *this* litigation had already occurred.

**Table of Contents**

**Page**

Statement of Relevant Facts

• The Case Before the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

• The Newport Superior Court Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

• Legal Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument

I. DEFENDANTS' COUNSEL DOES NOT HAVE OBLIGATIONS TO KARL . . 4

II. THERE EXISTS NO GENUINE ISSUE INVOLVING CONFIDENTIAL OR PRIVILEGED INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. THERE IS NO GENUINE "CONFLICT" IN ANY EVENT . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statement of Relevant Facts**

• **The Case Before The Court**

This is an action of particularly narrow scope. It seeks simply to invalidate an option agreement ("the Option Agreement") entered into between Carolyn B. Haffenreffer (by and through her attorney in fact, David H. Haffenreffer) and defendants William and Janet Coleman, friends of the Haffenreffer family, on October 29, 2002.

The Option Agreement provided the Colemans with the right to purchase certain parcels of real estate at the Haffenreffer compound in Little Compton (Seaconnet Farm) after the death of Carolyn Haffenreffer. The option extended only to parcels that no member of the extended Haffenreffer family wished to retain. The purchase price prescribed by the Option Agreement was to be based on "fair market value to be determined by the average of three appraisals by accredited local real estate professionals". (Copy of Option Agreement attached as "Exhibit A" hereto).

The Colemans had been close to Carolyn Haffenreffer, her late husband Carl, her son David, and most of their family members. They had rented properties at Seaconnet Farm for many years and had been repeatedly promised an opportunity to purchase property there. Indeed, the opening paragraph of the Option Agreement states that it was intended "to formalize the 'gentlemen's agreement' option that has informally existed between our families for years." (id.). The Option Agreement was of benefit to Carolyn in that it reduced, clarified, and clearly defined the much more open ended '"gentlemen's agreement". It reduced the likelihood of future disputes (and potential litigation) over just what the Colemans' option rights were, and made clear (for Carolyn's benefit) that the option only applied to real estate at Seaconnet Farm that was designated to be sold under her will and that no Haffenreffer family

member wanted to buy. It also established (for Carolyn's benefit) a three appraiser methodology for ensuring that the price the Colemans were required to pay was truly "fair market value".

Carolyn B. Haffenreffer died in 2003. Her sons, David and Karl, are two of the three co-executors of her estate. They are also the primary beneficiaries of the estate. The third co-executor, Noel Field, is an attorney now or formerly affiliated with the firm of Hinckley, Allen and Snyder. That firm is legal counsel for the estate.

Karl and David do not get along. This litigation is but one manifestation of the conflict.

Karl brought this action earlier this year to void the option agreement, claiming that David lacked authority to enter into it and that it was void for lack of consideration. The case was not brought by the lawyers for Carolyn's estate because there was no desire by any person other than Karl to bring it. As set forth in the complaint (para. 17), the other two co-executors disagreed with Karl's opinion on the option agreement, so he has gone out on his own with this litigation, purporting to be acting "as a beneficiary of, and person legally interested in, the Estate", pursuant to R.I.G.L. §33-18-17. (id., Para. 4).

- **The Newport Superior Court Litigation**

This litigation appears to be some manner of retribution by Karl against David (through his friends, the Colemans) relating to litigation pending between David and Karl in Newport County Superior Court. That case was filed by David. Like this one filed by Karl, it was a "solo" claim not joined in by a majority of the co-executors of Carolyn's Estate. Indeed the other two executors (Karl and Noel Field, Esq.) are the defendants. The suit seeks declaratory and other relief against Karl relating to the manner in which Karl went about trying to purchase real estate offered for sale by the estate during 2005. The seminal issue there involves whether

or not Karl complied with the terms of an offer protocol the three executors had developed for offering the parcels to family members. There, as here, the central issue is very narrow, and is likely to be resolved on cross motions for summary judgment. (The memorandum in support of David's motion for summary judgment is attached as Exhibit B. Karl has not yet filed his response.) Karl has also filed a counterclaim/crossclaim in that litigation to the effect that David forfeited his rights as a beneficiary of the estate by allegedly bringing that litigation.

- **Legal Representation**

R. Daniel Prentiss, Esq. represents Karl in the Newport Superior Court litigation, and he also represents Karl in this litigation. Gelfuso & Lachut, Inc. has represented David in the Newport Superior Court litigation since inception and has attended exclusively to all discovery and court hearings. Blish & Cavanagh entered its appearance in that litigation as co-counsel assisting with the motion for summary judgment (copy attached as Exhibit B hereto). Blish & Cavanagh represents the defendants in this litigation.

## ARGUMENT

## I.

## DEFENDANTS' COUNSEL DOES NOT HAVE OBLIGATIONS TO KARL

Plaintiff's motion to disqualify proceeds from the premise that defendants' counsel, Blish & Cavanagh, somehow represents Karl as well as David and the defendants (the Colemans). However, Blish & Cavanagh has never represented Karl in any capacity - and have never even met him. Karl does not have (and has never had) any basis for expecting that Blish & Cavanagh was somehow protecting his interests - at any moment.

Blish & Cavanagh certainly does not represent Carolyn's "estate" such as to have

obligations to Karl as beneficiary, any more than R. Daniel Prentiss represents Carolyn's "estate" (such as to have obligations to David as beneficiary). The reality is that neither David nor Karl can take valid action on their own for the estate without the participation of at least one of the other two co-executors. Neither litigation has been so authorized, and David and Karl are essentially proceeding solo - essentially against each other. Under no circumstances has either had any reason to expect the other's counsel to be looking after his interests.

Indeed, Blish & Cavanagh is in no different position in these two cases than R. Daniel Prentiss, Esq. In this case his client, Karl (whom Mr. Prentiss represents as co-executor in the Newport Superior Court case) is taking action to invalidate an option agreement that benefits the estate, thereby having potentially adverse implications for David as a beneficiary. Yet he seeks to disqualify Blish & Cavanagh for representing the Colemans - strangers to the Newport Superior Court case - who are merely trying to defend their option.

The cases plaintiff has cited in support of his motion to disqualify are inapposite in that they involve a very different issue than the one presented here. They involve legal malpractice claims by beneficiaries of estates against attorneys that clearly represented those estates, and they turned on principles of privity and reasonable forseeability applicable to tort liability. See, e.g., The American Kennel Club Museum of The Dog v. Edwards & Angell, LLP, 2002 R.I. Super. LEXIS 104; Charles v. Hardecty, 839 P.2d 1303 (Nev. 1993). The defendant attorneys in those cases clearly had every reason to believe (as did the plaintiff beneficiaries) that the plaintiffs were relying on their skill and work product. This is clearly not the case here.

## II.

## THERE EXISTS NO GENUINE ISSUE INVOLVING CONFIDENTIAL OR PRIVILEGED INFORMATION

As set forth above, the narrow issue in this case is whether or not a November 1, 2002

Option Agreement is void for lack of consideration. Karl claims that it was a "gift" from David, acting as attorney in fact for Carolyn, to their friends, the Colemans. The Colemans, on the other hand, insist that the Option Agreement involved a "value for value" exchange, in that it clarified and defined ambiguous pre-existing option rights in a way which benefitted both the Colemans and Carolyn in some respect. In any event, the case is all about the circumstances leading up to and surrounding the execution of the Option Agreement in November of 2002. This was a year before Carolyn Haffenreffer died, and hence before there was even any "estate".

Plaintiff's suggestion that defendants' attorneys are at an unfair advantage here by reason of their possession of "privileged and confidential information" relating to the estate is unfounded for several reasons. First, defendants' attorneys do not represent the estate and have never done so. Second, plaintiff has filed a "privilege log" in this litigation which purports to list all the "privileged communications" exempt from discovery in this case (copy attached hereto as Exhibit C). Not a single document on the list was created less than two years after the Option Agreement at issue here was created. Also, based on the description of the documents listed it seems inconceivable that any of the documents would be relevant, useful, or admissible in this action in any event.[1] (This could be verified upon *in camera* inspection by the Court.)

While plaintiff is correct that inadvertent disclosure of confidential documents can in some cases warrant disqualification of counsel, a "materiality" analysis is applicable to these cases, and disqualification is generally a last resort limited to egregious cases involving bad

[1]There are some November, 2004 letters from Hinckley, Allen & Snyder, the estate's attorneys, to the Colemans, which appear on the privilege log but which are clearly not privileged. They are essentially a proposal to change the appraisal mechanism in the Option Agreement.

faith and/or demonstrable prejudice. See, e.g., Moss v. Tacc Int'l Corp., 776 F. Supp. 622, 624 (D. Mass. 1991) (" . . . [M]any times such motions are made for tactical, not substantive, reasons . . .. Thus, when deciding on a motion for disqualification, a court should proceed with caution . . . ."); Milford Power Limited Partnership v. Enron Corp., 886 F. Supp. 53 (D. Mass. 1995). These conditions simply do not apply here.

**III.**

**THERE IS NO GENUINE "CONFLICT" IN ANY EVENT**

Setting aside for the moment the issue of whether either Blish & Cavanagh or R. Daniel Prentiss truly represent Carolyn's "estate" by virtue of their representation of David and Karl, respectively, there is no genuine "conflict" here between the interests of the "estate" and the interests of the Colemans.

As set forth above, the Colemans' position is that the Option Agreement was desired by David (as attorney-in-fact for Carolyn) as a means of limiting, clarifying and defining the much more open ended "gentlemen's agreement" option the Colemans had had for years. Prior to the written Option Agreement, the Colemans' option rights to purchase real estate of the Haffenreffer family were somewhat ambiguous and uncertain in that they were based on letters and oral representations and assurances. The Option Agreement, they contend here, represented a value-for-value exchange in that it made precise (and more narrowly defined) the Colemans' option rights. This was of benefit to Carolyn at the time because it made clear that the option only extended to properties no other Haffenreffer family member wanted, and prescribed a clear method for establishing the option price and ensuring that true fair market value would be paid. More clearly defining the Option also reduced the likelihood of future disputes, uncertainty, and possible litigation over just what the Colemans' option rights were.

Against this backdrop, Karl's claim in this litigation (seeking to defeat the option) would appear to be more "adverse" to the interests of the "estate" than the Colemans' defense of that claim. At worst, there is no "conflict" one way or the other. The property subject to the option has to be sold by the estate anyway. (Again, it is, by definition, property that family members have declined the opportunity to purchase.) If the Option Agreement is upheld, it will be sold to the Colemans at "fair market value" to be determined by three independent appraisers. If the Option Agreement is invalidated, the same property will be marketed and sold in some other fashion, presumably again at fair market value. Where is the potential "adversity" to the estate from the Colemans' defense of their option? (Again, the "estate" is not even contesting the option. Two of the three executors refused to do so, and Karl is acting here on his own to assert the alleged "conflict".)

**Conclusion**

For the reasons set forth above, plaintiff's Motion to Disqualify Counsel should be denied.

Respectfully submitted,

/s/ William R. Landry

William R. Landry #2494
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, RI 02903-1765
Telephone: (401) 831-8900
Telecopy: (401) 490-7640

January 4, 2007

Attorneys for Defendants
William Coleman and Janet Coleman

CERTIFICATE OF SERVICE

______I hereby certify that on this 4th day of January, 2007, this document was filed electronically and is available for reviewing and downloading to the ECF registered counsel of record, as follows:

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Financial Plaza, Suite 1800
Providence, RI 02903

/s/ William R. Landry

CoWi7104mem.wpd