STATE OF RHODE ISLAND
NEWPORT, Sc.

SUPERIOR COURT

DAVID H. HAFFENREFFER, In His Capacity As Co-Executor of The Estate of Carolyn B. Haffenreffer,
Plaintiff

v.

KARL HAFFENREFFER, In His Capacity As Co-Executor of The Estate of Carolyn B. Haffenreffer and Individually, and NOEL M. FIELD, ESQ., In His Capacity As Co-Executor Of The Estate of Carolyn B. Haffenreffer,
Defendants

C.A. No. NC 05-204

**PLAINTIFF'S MEMORANDUM**
**<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

**<u>Introduction</u>**

The core issue in this case is whether or not a contract purchaser of real estate has lost his right to purchase the real estate, under these circumstances:

1. The purchaser accepted in writing a written offer of sale for the real estate.

2. The purchaser tried to close on the real estate on terms different than the ones that had clearly and unambiguously been set forth in the written offer of sale (<u>i.e.</u>, the offer he had already accepted).

3. The purchaser seeks to have the Court "interpret" the terms and conditions of the written offer of sale in a manner that would require the Court to <u>change</u> those terms.

As set forth more fully below, the parol evidence rule of substantive law precludes a party from attacking - or seeking to change - the clear and unambiguous provisions of a contract, particularly where - as here - such changes would require the Court to ignore emphatic language in the contract. The rule is dispositive of the core issue in this case, and summary judgment on that issue should enter accordingly.

# Table of Contents

Page

Introduction . . . . . . . . . . 1

Statement of Undisputed Relevant Facts

- The Parties . . . . . . . . . . 2
- The Important Distinction Between The Carolyn Haffenreffer "Trust" and The Carolyn Haffenreffer "Will" . . . . . . . . . . 2
- The Relevant Provisions of Carolyn Haffenreffer's Will . . . . . . . . . . 3
- The Offer Protocol Established by the Co-Executors . . . . . . . . . . 3
- Karl's Unconditional Acceptance of The Terms of the Offer Document; His Subsequent Attempt to Change Those Terms . . . . . . . . . . 5
- The Offer Document Was Not the Only Document that Precluded the Position Taken By Karl . . . . . . . . . . 6
- The Neutral Co-Executor's Rejection of Karl's Attempt to Take a Credit Not Authorized by the Offer He had Accepted . . . . . . . . . . 7

Legal Argument

I: THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT . . . . . . . . . . 9

II: DAVID HAFFENREFFER IS ENTITLED TO SUMMARY JUDGMENT BECAUSE KARL MATERIALLY BREACHED THE TERMS OF THE OFFER DOCUMENT . . . . . . . . . . 10

III: THE PAROL EVIDENCE RULE OF SUBSTANTIVE LAW BARS EVIDENCE OF SUBJECTIVE INTENT REGARDING THE TERMS IN THE OFFER DOCUMENT . . . . . . . . . . 12

IV: THE CANONS OF CONSTRUCTION COMPEL THAT THE CONTRACT TERMS BE ENFORCED AS WRITTEN . . . . . . . . . . 14

Conclusion . . . . . . . . . . 15

## Statement of Undisputed Relevant Facts

• **The Parties**

The principal combatants here, plaintiff David H. Haffenreffer ("David") and defendant Karl Haffenreffer ("Karl), are brothers. They are also co-executors under the will of their mother, the late Carolyn B. Haffenreffer of Little Compton, Rhode Island. (Mrs. Haffenreffer died in 2003.) The third co-executor, Noel F. Field ("Field"), a semi-retired Hinckley, Allen & Snyder lawyer, is also a defendant.

• **The Important Distinction Between The Carolyn Haffenreffer "Trust" And The Carolyn Haffenreffer "Will"**

During their lifetimes, Carolyn Haffenreffer and/or her late husband, Carl Haffenreffer, had substantial real estate holdings, including multiple properties in Little Compton, and a residence on Congdon Street in Providence. Carl Haffenreffer died in 1999. Carolyn Haffenreffer died in 2003.

In 1982, Carolyn Haffenreffer and Carl Haffenreffer each established corresponding Trust Agreements with Fleet National Bank (now Bank of America) as Trustee, and they amended the Trusts from time to time. (App. Exh. 2).[1] In 1995, Carolyn Haffenreffer executed a Will. (App. Exh. 1). Although the Will and the Trust make periodic references to each other, they were executed 13 years apart, and the Trustee of her Trust, Fleet National Bank, is not an executor under her Will. For reasons which will become clearer below, it is important to note that the 1982 Trust and the 1995 Will were two completely different mechanisms - indeed two different legal entities - through which property owned by Carolyn Haffenreffer was designed to pass to her heirs and beneficiaries, principally David and Karl.

---

[1] "App. Exh. ___" makes reference to the tabbed exhibits in the Appendix of Exhibits submitted herewith.

• <u>The Relevant Provisions of Carolyn Haffenreffer's Will</u>

The real estate which is the subject of this litigation passed under the provisions of Carolyn Haffenreffer's 1995 <u>Will</u> - not her 1982 <u>Trust</u>. It consists of four parcels in Little Compton which were not devised to <u>either</u> Karl or David. Instead, Sections 4.5 and 4.6 of the Will provided for them to be sold by the co-Executors, subject to the provisions of another Section of the Will (Section 10) which required the co-executors to offer them to family members first. This "family first option" provision of Section 10 of the Will is the one which led to the contract dispute which is the basis for this ligation. That Section provided in pertinent part as follows:

> "SECTION 10
> OPTION WITH RESPECT TO REAL ESTATE
>
> 10.1 With respect to any parcel of real estate which any of my executors may offer for sale ... I hereby specifically direct that prior to making such sale the seller shall offer such property to each of my sons who may then be living, the widow of either son who may be deceased, and to each grandchild of mine who may then be living at the lowest price which the seller would be willing to accept for such parcel **and shall notify each of them concerning all terms and conditions upon which the sale would be made.**"
>
> [emphasis supplied]
>
> 10.2 Each person to whom such offer is made shall within sixty (60) days of receiving such offer notify the seller of his desire either to accept or to reject such offer .. If more than one person to whom such offer is made shall indicate a desire to accept such offer the sale shall be made to the person selected by the seller by lot. If such offer is accepted by any of the persons to whom the offer is made, such person shall make payment of the sale price to the seller within such reasonable period of time (not to exceed ninety days after the mailing of such original offer by the seller) as the seller and buyer may agree upon."

• <u>The Offer Protocol Established By The Co-Executors</u>

Carolyn's Will did not specify the precise mechanics by which the co-executors were to offer the four Little Compton parcels to family members. However, Karl, David and Field were

able to agree unanimously on an "Offer of Real Estate" document for this purpose (the "Offer Document"). (App. Exh. 3). The Offer Document listed the four properties, and established the prices at which they could be purchased by family members who wished to accept the offer, as follows:

| PROPERTY | OFFER PRICE |
|---|---|
| Parcel 1 (Assessor's Plat 9, Lots 282, 283 and 284 - West)[2] | $1,622,400.00 |
| Parcel 2 (Assessor's Plat 9, Lot 284 - East) | $93,100.00 |
| Parcel 3 (Assessor's Plat 9, Lot 400-3A99) | $1,100,000.00 |
| Parcel 4 (Assessor's Plat 9, Lot 400-4A99) | $3,500,000.00 |

The Offer Document was in fact distributed by the co-executors to Haffenreffer family members - including Karl and David - on or about Mach 2, 2005. It included an "Offer Response Form" which the offerees were directed to return if they were interested in accepting the offer. The Offer Response Form had to be delivered to Hinckley, Allen & Snyder on or before 5:00 p.m. on Monday, May 2, 2005. This one page Form listed the four parcels and the Offer prices for each just as set forth above. All the offeree had to do was circle the words "Accept" or "Reject" next to each parcel. The prices and terms of sale were non-negotiable.

The Offer Document provided that the Closing on the four properties being offered would take place on or before May 31, 2005 - a date less than thirty (30) days after any written acceptance of the offer was due. (As set forth above, this tight time frame was required by Section 10.2 of the Will.) Importantly, the Offer Document set forth with precision (and under the heading "Terms") just <u>how</u> payment for the propert(ies) had to be made at the Closing, and what type of "credit" - if any - an offeree would be able to apply at the Closing in lieu of cash.

---

[2]Lots 282, 283 and 284 - West were separately listed in the Offer Document, but they were required to be purchased together as a single parcel at the combined price indicated.

These "mode of payment/credit" terms are at the heart of this dispute. They were as follows (emphasis supplied):

> "Terms: Payment shall be made in the form of cash, certified check, bank check or wire transfer, with or without financing, excepting, however, seller financing, in the full amount of the purchase price, subject to customary adjustments and prorations as of the date of transfer and subject to adjustment or credit for shares or amounts due to such offeree from the Estate of Carolyn B. Haffenreffer **<u>pursuant to the terms of the Will</u>**."[3]

Importantly, there was no provision in the Offer Document for any Offerees to be able to take a "credit" (in lieu of cash) at the Closing for amounts not due then "**pursuant to the terms of the Will**". As set forth below, Karl Haffenreffer unconditionally accepted the Offer as to Parcels 1, 2 and 4 but lacked the $5,215, 500.00 to close on these parcels, and tried to take credits for expectancies he had that were <u>not</u> due him "pursuant to the terms of [Carolyn's] Will". Indeed, it is undisputed that <u>the Will</u> did not provide for Karl to receive <u>any</u> assets even remotely sufficient to pay the combined purchase price for the parcels which were the subject of the Offer. (Karl, unlike David, had no children and had been well provided for under the provisions of Carolyn's 1982 Trust. He also had received Little Compton real estate from his father's estate that he recently sold for $4.5 million.)

- **<u>Karl's Unconditional Acceptance Of The Terms Of The Offer Document; His Subsequent Attempt To Change Those Terms</u>**

On May 2, 2005, at 4:46 P.M. - just minutes before the deadline for accepting the offer, Karl delivered an Offer Response Form unconditionally accepting the Offer as set forth in the Offer Document as to Parcels 1, 2 and 4. The only other family member who accepted the Offer in whole or in part was David's son, David Jr. He accepted the Offer as it related only to Parcel 1. Carolyn's Will (Section 10.2) provided for a "tie breaker" mechanism for dealing with two or

---

[3]The Offer Document itself was entitled "OFFER OF REAL ESTATE TO FAMILY MEMBERS PURSUANT TO SECTION 10.1 OF THE WILL OF CAROLYN B. HAFFENREFFER ... ."

more family members wanting to purchase the same parcel. This mechanism involved the casting of lots. Karl prevailed in this process over David, Jr. and became the official "acceptee" of the offer as it related to Parcel 1 (as well as Parcels 2 and 4).

Then an extraordinary thing happened. Karl announced that he did not have the cash to close on any parcel other than Parcel 2 ($93,100.00), and that he intended to try to take a "credit" in lieu of cash as to Parcels 1 and 4 **even though he had no such credit due him under the provisions of Carolyn's Will**. He claimed that he might someday receive substantial funds under the provisions of Carolyn's 1982 Trust. He sought to have the other co-executors ignore the explicit language all three co-executors (including Karl himself) had agreed upon in the Offer Document that credits in lieu of cash could be taken only with respect to sums **due under the terms of Carolyn's Will.**

- **The Offer Document Was Not the Only Document That Precluded The Position Taken by Karl**

Importantly, in terms of Carolyn Haffenreffer's overall estate planning efforts, the difference between assets passing "under the terms of [her] **Trust**" and those passing under the terms of [her] **Will**" is not merely a matter of semantics. Both the Will and the Trust documents reflect that she was acutely aware of the difference between property that was to pass under one but not the other. Indeed the Trust document itself sets forth an elaborate scheme of allocations and valuations in which she specifically distinguished between real estate that would pass under the provisions of that "**Trust**" from real estate that was to pass "**under the terms of my will**". (Trust Document, App. Exh. 2). Indeed this distinction is made no fewer than five (5) times in the Trust document. (Id., Sec. 10.1; Sec. 10.2; Sec. 10.3(ii); Sec. 10.3.2; Sec. 10.3.4(I)).

Moreover, Carolyn's **Trust** contained a specific prohibition against the type of credit (for

"anticipated" distributions) that Karl is seeking to force on his co-executors here. Specifically Section 25 of the Trust (App. Exh. 2) provides as follows (emphasis supplied):

SECTION 25
NON-ASSIGNMENT PROVISION

> No interest of any beneficiary (other than me) **shall be subject to** alienation or **anticipation**, to claims or alimony or support, to voluntary transfer **without the written consent of the trustee.**"[4]

Similarly, Carolyn's **Will** was not hospitable to the notion that "credits" for possible future distributions from other sources could be used in lieu of cash for payment for real estate she directed her co-executors to sell under the Will. As set forth above, the Will required the closings in such instances to take place within 90 days after the 60 day Offer was made, meaning an offeree had just 30 days to close and "make payment of the purchase price" to the co-executors after he or she accepted the offer. This tight time frame clearly left little room for payment to be deferred until the offeree received assets from sources other than the Will (e.g., the Trust) in the future.

- **The Neutral Co-Executor's Rejection Of Karl's Attempt To Take A Credit Not Authorized By The Offer He Had Accepted**

David and Field, the neutral (i.e., "non-Family") co-executor, were taken aback by what Karl was attempting to do. Field was alarmed that such an unauthorized, unanticipated credit in lieu of cash for so large a sum would leave the co-executors without sufficient cash with which to pay the estate taxes that were coming due. (The estate was "cash poor" and the IRS has not yet weighed in on its tax return.) The closing date was extended to June 8, 2005 as a courtesy to Karl, but Field and his firm issued a written opinion dated June 1, 2005 to the effect that Karl was not entitled under the Offer Document to take the type of credit in lieu of cash

[4]The Trustee of the Trust is Bank of America, as successor in interest to Fleet National Bank ("BNA"). BNA is not a co-executor under the Will.

that he was trying to take. In a Memorandum dated June 1, 2005, to Karl and David and their respective counsel, Field and Hinckley, Allen & Snyder correctly opined that the Offer Document required payment in **"cash, certified check, bank check, or wire transfer"**, and that its provisions relating to credits in lieu of cash were inapplicable to either Karl or David, Jr. in that there were no **sums due** either from the estate **under the provisions of Carolyn's Will.** Field and Hinckley, Allen & Snyder concluded their opinion memorandum as follows:

> **"3. Pursuant to the terms of paragraph 10 [of Carolyn's Will], Karl Haffenreffer agreed to purchase property known as High and Dry for the price of $1,525,000, lot 283 for $8,000, lot 284 west for $89,400, lot 284 east for $93,100, and lot 400-4A99 (known as the "Watch House Parcel") for $3,500,000. The total payment to be $5,215,500.**
>
> **4. As non-family executor, I will be prepared to execute deeds of those parcels to Karl Haffenreffer subject to the payment as specified in the offer in the form of cash, certified check, bank check, or wire transfer. Unless both executors agree on different terms, no other form of payment will be accepted.**
>
> **5. If Karl misunderstood the terms set forth in the offer, I would be willing to accept the withdrawal of his offer for any of the parcels for which he has submitted an acceptance.**
>
> **6. Because of family friction, the executors have endeavored to comply strictly with the terms of the will. I feel it is appropriate for the executors now to comply strictly with the terms of the will and the terms set forth in the offer to which all executors agreed."**

Karl would not take no for an answer. The day before the June 8, 2005 Closing he had his attorney write a letter to David and Field repeating his disordered demand that they essentially change the terms of the Offer and allow him to take a "credit" for sums that he felt he would get some day under Carolyn's 1982 **Trust**, but that were not due him under the terms of Carolyn's 1995 **Will**. (App. Exh. 5).

The Closing obviously never happened, and the parties remain divided. Karl seeks to impose upon David and Field (as co-executors) a "credit - in lieu of cash" term materially different than the one clearly and unambiguously set forth in the Offer Document he had

accepted (and had indeed co-issued and executed as co-executor!). He seeks to hold David and Field liable for "breach" of contract terms they in fact had never agreed to, and he seeks "specific performance" of that purported "contract".

David, on the other hand, contends that Karl has breached the contract of purchase that resulted from his acceptance of the Offer; that neither Karl nor any other family member can force modified contract terms upon the co-trustees; and that the parol evidence rule precludes Karl from seeking to "interpret" the clear and unambiguous "credit in lieu of cash" term of the Offer Document out of existence. (That is, by erasing the words "**credit ... pursuant to the terms of [Carolyn's] Will**"] in the Offer document and replacing them with the words, "**credit ... pursuant to the terms of [Carolyn's] Trust.**")

## Legal Argument

## I.

## THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT

Axiomatically, summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. R. Civ. P. 56.

One need not look past the pleadings here (and the five (5) uncontroverted documents in the Appendix of Exhibits) to confirm that the key facts relevant to this motion are not in dispute. Indeed Karl has admitted in the affirmative allegations of his Counterclaim, (1) that the relevant provisions of Carolyn's Will are the ones set forth above (Karl's Counterclaim, para. 3-7); (2) that Karl, David and Field agreed unanimously on the terms and conditions of the Offer Document before it was issued (id., Para. 8); (3) that Karl accepted the Offer as to

parcels 1, 3 and 4 in the manner described above (Karl's Counterclaim/Crossclaim, para. 7); and (4) that Karl's acceptance of the Offer as set forth in the Offer Document formed a "binding contract" between him and the co-executors (id., para. 10). The dispositive legal issue here is whether or not the Offer allowed for Karl to take a credit in lieu of cash to pay the purchase price where the credit involved future expectancies he had from a Trust, as opposed to a credit **"due [him] pursuant to the terms of [Carolyn's] Will"**. (Offer document, App. Exh. 3).

Importantly, Karl has gone on record in this case - in his Pre-Trial Memorandum - concurring that this dispositive issue is purely an issue of law; that there are no contested facts; and that the controlling documents are not ambiguous. In his Pre-Trial Memorandum, Karl acknowledges that "this is a question of law, encompassing the construction of the Will." (p. 7)[5]

## II.

## DAVID HAFFENREFFER IS ENTITLED TO SUMMARY JUDGMENT BECAUSE KARL MATERIALLY BREACHED THE TERMS OF THE OFFER DOCUMENT

". . . [I]t is a fundamental principle of contract law, as well as being well settled in this state, that clear and **unambiguous** language set out in a contract is controlling and will govern the legal consequences of its provisions." Durapin, Inc. v. American Prods., 559 A.2d 1051, 1056 (R.I. 1989). "The intent sought is not some undisclosed intent that might have existed in the minds of the contracting parties, but the intent which has been expressed by the language contained in the contract." Lancellotti v. Lancellotti, 119 R.I. 184, 198, 377 A.2d 1315, 1322 (1997). Moreover, it is a well accepted rule "that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents." Kottis v. Cerilli, 612 A.2d 661, 668 (R.I. 1992), quoting F.D. McKendall

[5]More accurately, it is one encompassing the construction of the Will and the Offer Protocol.

Lumber Co. v. Kalian, 425 A.2d 515, 518 (R.I. 1981).

The Offer Document unambiguously sets forth the terms governing any purchase by Karl of the three subject parcels of real estate. As noted above, in addition to setting forth the price and closing date for that purchase, the Offer Document includes the following terms regarding payment:

> "Payment shall be made in the form of cash, certified check, bank check or wire transfer, with or without financing, excepting however, seller financing, in the full amount of the purchase price, subject to customary adjustments and prorations as of the date of transfer and subject to adjustment or credit for shares or amounts due to such offeree from the Estate of Carolyn B. Haffenreffer **pursuant to the terms of the Will.**" (emphasis supplied)

David, Karl, and Attorney Field, as the three co-executors of Carolyn's Estate, signed the Offer Document on or about March 2, 2005, indicating their assent to the terms contained therein. On May 2, 2005, Karl again executed the Offer Document, this time in his personal capacity as one of several individuals from the Haffenreffer family who had been selected by Carolyn as potential purchasers of the real estate before it could be offered for sale to the general public. Indeed Karl has acknowledged that when he accepted the terms of the Offer Document, a "binding contract" was formed between him and the Estate.

Despite the clear payment terms governing the sale, Karl attempted to purchase the real estate by means other than those provided for in the Offer Document by trying to take a "credit" against amounts passing to him from Mrs. Haffenreffer's **Trust** instead of her **Will.** The Offer Document is eminently clear, however, that the only credit that could be used to purchase the offered property was "credit for shares or amounts due . . . pursuant to the terms of [Carolyn's] **Will.**" Even construing the devises contained in the Will in the light most favorable to Karl, it is beyond dispute that the amount he stood to collect pursuant to the Will was insufficient to cover the combined purchase price for the three parcels.

It well-established under Rhode Island law that in a transaction for the purchase of real property, a buyer's failure to tender the purchase price at the closing date or within a reasonable time thereafter constitutes a material breach of the purchase agreement. Durepo v. May, 73 R.I. 71, 75, 54 A.2d 15, 18 (1947). See Safeway Sys. v. Manuel Bros., 102 R.I. 136, 145-46, 228 A.2d 851, 856-57 (1967); Lajayi v. Fafiyebi, 860 A.2d 680 (R.I. 2004). Thus, Karl's failure to tender the funds as agreed constitutes a material breach of the binding contract he admits resulted from his acceptance of the Offer Document, and summary judgment should enter in favor of David accordingly.

## III.

## THE PAROL EVIDENCE RULE OF SUBSTANTIVE LAW BARS EVIDENCE OF SUBJECTIVE INTENT REGARDING THE TERMS IN THE OFFER DOCUMENT

"The parol-evidence rule provides that 'parol or extrinsic evidence is not admissible to vary, alter or contradict a written agreement.'" Paolella v. Radiologic Leasing Associates, 769 A.2d 596, 599 (R.I. 2001) (quoting Supreme Woodworking Co. v. Zuckerberg, 82 R.I. 247, 252, 107 A.2d 287, 290 (1954)). "The parol evidence rule is one of substantive law, and evidence violative of the rule . . . will not be considered." American Underwriting Corp. v. Rhode Island Hospital Trust Co., 111 R.I. 415, 423 n.1 (1973).

The course of discovery in this litigation to date has revealed that Karl would advance at trial that the terms of the Offer Document should be construed to mean something other than what they clearly state regarding the acceptable method of payment for the subject real estate. Specifically, Karl would have the Court "interpret" the words "credit for shares or amounts due to such offeree ... **pursuant to the terms of the Will**" to mean, "credit for shares or amounts due to such offeree ... **pursuant to the terms of the Trust.**" He would presumably offer evidence regarding his own subjective intent, and David and Field would presumably then testify as to

theirs. It would be an exercise squarely precluded by the parol evidence rule, which forecloses consideration of extra-contractual "subjective intent" to alter contract terms. Again, the rule is a rule of substantive law and not merely a rule of evidence. It is firmly grounded in policy considerations that seek to protect the integrity of written contracts from collateral attack by the very parties that entered into them. It recognizes that adherence to plain and agreed-to contract terms - as opposed to a reaching inquiry into hidden meanings and subjective intents - is the most prudent and only legally acceptable course. See, Brinderson-Newberg Joint Venure v. Pac. Erectors, 971 F.2d 272 (9th Cir. 1992) ("[the parol evidence] rule discourages interested witnesses to a contract from committing fraud, perjury, or intentional invention by making statements that the contract did not actually represent the agreement of the parties").

This case is even more compelling than most for application of the parol evidence rule for two reasons. First, Karl was both the "co-offeror" here and "the offeree". He approved the form and content of the Offer Document (including, of course, its limited "credit in lieu of cash" feature), and then accepted that offer as a family member. (All the other family members who might have responded to the offer had to weigh the decision based on the clear terms of the Offer Document - including the "credit in lieu of cash" terms. Now Karl wants to have a term changed in his favor after he accepted the Offer.) Second, the strained interpretation Karl seeks (i.e. that he should be allowed a credit under the terms of the **Trust** as opposed to the **Will**) is prohibited by the nonassignment/nonanticipation provisions of Section 25 of the Trust, as discussed more fully above.

In sum, this case presents a pure issue of law regarding the application of clear contract language. Any attempt by Karl to transform it into an investigation of the subjective intents of the three co-executors when they adopted the clear Offer Document language is precluded by the parol evidence rule of substantive law.

IV.

## THE CANONS OF CONSTRUCTION COMPEL THAT THE CONTRACT TERMS BE ENFORCED AS WRITTEN.

"Where a contract is to be construed on its terms alone, it is the court's duty to interpret the contract as a question of law [and] [i]t is only when contract terms are ambiguous that construction of terms becomes a question of fact." Judd Realty v. Tedesco, 400 A.2d 952 (R.I. 1979). "A court must favor interpretations which **give meaning** and effect to every part of the **contract** and reject those which reduce words to mere surplusage." DePasquale v. DePasquale, C.A. No. 91-7314, 1993 R.I. Super LEXIS 19, *11-12 (1993) (citing, Systemized of New England, Inc. v. SCM, Inc., 732 F.2d 1030 (1st Cir. 1984)).

The interpretation of the Offer Document that Karl would have this Court adopt stands in violation of these basic canons of contract construction. Again, Karl contends that he had the ability under the Offer Document to use credit from assets he stood to receive from the **Trust** of Mrs. Haffenreffer to purchase the subject property. The problem, however, is that to adopt this interpretation of the contract one needs to completely ignore the phrase "**. . . pursuant to the terms of the Will**" as it appears in the Offer Document. Looking more closely at the relevant language, if it were intended by the drafters of the Offer Document that Karl, or any of the other designated Haffenreffer family members for that matter, could purchase the property using credit from either the Trust or the Will, then that possibility could have been conveyed by simply cutting the relevant terms off after the portion that reads ". . . credit for shares or amounts due to such offeree from the Estate of Carolyn B. Haffenreffer." However, when the words ". . . pursuant to the terms of the Will" are added, it becomes clear that only assets passing to Karl or other family members **pursuant to the Will** could be used at the closing to support the purchase price. If some other protocol were intended, then these seven concluding words would have no meaning. Therefore, to adopt any interpretation of this language other

than one that would preclude Trust assets from being used to purchase the property would be to reduce the concluding clause to mere surplusage in contravention of Rhode Island law and the well-established canons of contract construction.

## Conclusion

For the reasons set forth above summary judgment should enter as follows:

1. Declaring that defendant Karl Haffenreffer breached the contract of purchase which resulted from his acceptance of the offer set forth in the "Offer Of Real Estate to Family Members Pursuant to Section 10.1 of the Will of Carolyn B. Haffenreffer ..." issued by the Co-Executors under the Will of Carolyn B. Haffenreffer. Said contract did not permit said defendant to close by utilizing a credit in lieu of cash with respect to assets anticipated by him in the future under the provisions of the **Trust** of Carolyn B. Haffenreffer. The contract only permitted credits in lieu of cash with respect to assets due offerees pursuant to the terms of the **Will** of Carolyn B. Haffenreffer;

2. Denying and dismissing defendant Karl Haffenreffer's counterclaims against his co-executors under the Will of Carolyn Haffenreffer for breach of contract and for specific performance of the aforesaid contract.

Respectfully submitted,

Joseph V. Cavanagh, Jr. #1139
William R. Landry #2494
Joseph V. Cavanagh, III #6907
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, RI 02903-1765
Telephone: (401) 831-8900

Alan P. Gelfuso #0421
Joseph R. Daigle #5429
GELFUSO & LACHUT, INC.
1193 Reservoir Avenue
Cranston, RI 02920
Telephone: (401) 942-4300

Co-Counsel for Plaintiff

Dated: November 9, 2006

CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2006, a true copy of the within document was forwarded by U.S. mail, postage prepaid, to counsel of record, as follows:

Paul A. Silva, Esq.
Hinckley, Allen & Snyder, LLP
1500 Fleet Center
Providence, RI 02903

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Financial Plaza, Suite 1800
Providence, RI 02903

Marvin Homonoff, Esq.
Homonoff Levine & Pulner
369 South Main Street
Providence, RI 02903

Barbara S. Cohen, Esq.
10 Weybosset Street
Providence, RI 02903