**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| KARL HAFFENREFFER | : | |
| | : | |
| v. | : | C.A. No. 06-0299-T |
| | : | |
| WILLIAM COLEMAN and JANET COLEMAN | : | |

**REPLY MEMORANDUM OF PLAINTIFF ON PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

The defendants' opposition to Karl Haffenreffer's motion to disqualify counsel proceeds from a number of fallacies. The first is that the motion is premised on the assertion that Blish & Cavanagh has undertaken to represent Karl Haffenreffer ("Karl"). *See* Memorandum In Opposition to Plaintiff's Motion to Disqualify Counsel ("Defendants' Memo"), at 1, 4. On the contrary, Karl's motion asserts that in representing David Haffenreffer ("David") in his capacity as an executor of the Estate of Carolyn B. Haffenreffer ("Estate"), Blish & Cavanagh has acquired fiduciary obligations to the Estate of which David is an executor. As counsel to an executor of the Estate, with fiduciary obligations to the Estate, Blish & Cavanagh is privy to the confidential documents of the Estate. The defendants do not in any way dispute this fact, which is the centerpiece of, and the driving motivation for, the motion for disqualification. These confidential documents relate directly to the instant litigation, in which Blish & Cavanagh represents parties who are in active conflict with the Estate.

The second fallacy is that there is some kind of (unexplained) legal significance to the fact that the confidential attorney-client communications of the Estate's executors with their counsel post-date the so-called option letter. Defendants' Memo at 1, 6. That the executors did not begin to discuss the option letter among themselves or with their counsel until after Mrs. Haffenreffer's death does not alter in even the slightest degree the confidentiality or sensitivity of those communications, or their relevance to the instant litigation. The executors and their counsel could not have discussed the option letter earlier, because David did not reveal its existence until after his mother's death. Once its existence was revealed, it became a matter of obvious concern to the executors and their counsel; the privilege log lists more than 40 communications between June, 2004 and May, 2006 that relate to the Coleman situation. The significance of these communications lies not in the dates on which they were written, but in their subject matter. The subject matter involves the merits of the litigation that Karl has instituted on behalf of the Estate against the Colemans.

The third fallacy is that this litigation was brought by Karl individually, and is not the action of the Estate. Defendants' Memo at 2, 8. In accordance with Rhode Island law, Karl brought this action "on behalf of the estate." It is of no moment to the validity of the litigation that David and the third executor, Noel M. Field, Jr., Esq., declined to agree to the filing of the suit. The statute, R.I. Gen. Laws §33-18-17, exists for the very purpose of

dealing with the situation where a fiduciary fails or refuses because of a conflict of interest to take necessary action on behalf of the estate.

The final fallacy is the assertion that "there is no genuine conflict" between the interests of the Estate and those of the Colemans. Defendants' Memo at 7. The so-called option agreement, if it is valid, entitles the Colemans to purchase any and all of the several parcels to which it is or may become applicable at a price equal to the average of three appraisals, rather than a price set by an active market. Opinions as to the value of real property do not derive from pure science, and are not made with mathematical precision. They can be highly subjective, particularly in the case of unique property, even when they are not subject to possible influence by a client's interest in the use of the appraisal. To give but one example, two date of death (December 13, 2003) appraisals for one of the Estate properties in Little Compton, Lot 274 of Plat 9, were $3.6 million and $5.1 million. These compared with the assessed value of $3,806,000 as set by the Town of Little Compton Tax Assessors (as of December 31, 2003). The total range of values is $1.5 million; the difference between the highest valuation and the average of the three opinions is almost $1 million.

The executors' and their counsel's concern over the existence of a valid option in favor of the Colemans was not merely academic. Clearly, the ability to obtain a price equal to an average of three opinions (in an undefined process in which the Colemans would presumably have at least some say in

the selection of appraisers) raises a distinct possibility that the purchase price received by the Estate under the procedure of the option letter would be significantly less than the price that would be set by a free market for the property. If that were not the case, then the Colemans had no reason to refuse Karl's request that they execute a waiver of the option, so that the property could be freely marketed.

The Colemans' argument on this point, in its assertion that the option letter was a "value-for-value" exchange, also presupposes that they will prevail on the pivotal issue of this litigation,. The evidence will quite clearly show that that is not the case. The so-called "gentlemen's agreement" (a term which is generally held to mean an unenforceable understanding) was a vague promise by Carl W. Haffenreffer ("Carl") that related solely to a single parcel of property known as "Roughhouse." The Roughhouse parcel was devised to David in the wills of both Carl Haffenreffer and his wife Carolyn. Carl died in 1999. To the extent that the "gentlemen's agreement" was enforceable at all, it was enforceable against Carl. The Colemans made no claim against his estate; Roughhouse passed to his wife. Whatever vitality the "gentlemen's agreement" ever had expired on Carl's death. There was no value exchanged for the option letter of November 1, 2002.

## CONCLUSION

The plaintiff filed this motion after deliberate consideration of its seriousness. It was filed out of concern for the ability of the Estate to litigate

its position against the Colemans' assertion of an option interest in Estate property. Rule 1.7 of Rhode Island's Rules of Professional Conduct prohibits a lawyer from representing a client if that representation will be adverse to another client. The rule's rationale in part is to prevent a lawyer from using confidential information obtained from an attorney-client relationship against a client's interests. Here, Blish & Cavanagh's representation of David makes it privy to the confidential information that he possesses as a fiduciary to the Estate. Blish & Cavanagh cannot be permitted to remain in a position representing parties in litigation with the Estate, when it is presumptively in possession of the Estate's confidential communications having to do with that litigation. The motion to disqualify should be granted.

Respectfully submitted,

KARL HAFFENREFFER

By his attorneys

**R. DANIEL PRENTISS, P.C.**

/s/ R. Daniel Prentiss
R. Daniel Prentiss (#0783)
One Financial Plaza, Suite 1800
Providence, RI 02903
Tel: 401-824-5150
Fax: 401-824-5123
dan@prentisslaw.com

**The plaintiff requests oral argument on this motion. The estimated time for argument is one hour.**

**CERTIFICATION**

I hereby certify that on this 9th day of January, 2007, this document was filed electronically and is available for reviewing and downloading to the ECF registered counsel of record.

William R. Landry, Esq.
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI 02903

/s/R. Daniel Prentiss