UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KARL HAFFENREFFER, Plaintiff | ) | |
| v. | ) | C.A. No. 06-0299/ T |
| WILLIAM COLEMAN and JANET COLEMAN, Defendants | ) | |

**PRE-TRIAL MEMORANDUM**
**OF DEFENDANTS WILLIAM COLEMAN AND JANET COLEMAN**

In accordance with the Pretrial Order entered by the Court on November 5, 2007, defendants William Coleman and Janet Coleman submit this Pre-Trial Memorandum.

**PARTIES**

The Plaintiff is Karl Haffenreffer, and his trial counsel is R. Daniel Prentiss, One Turks Head Place, Suite 380, Providence, RI 02903.

The Defendants are William Coleman and Janet Coleman, husband and wife. Their trial counsel is William R. Landry, Blish & Cavanagh LLP, 30 Exchange Terrace, Providence, RI 02903.

**FACTS**

**The Case Before The Court**

This is an action of particularly narrow scope. It seeks simply to invalidate an option agreement ("the Option Agreement") entered into between Carolyn B. Haffenreffer (by and through her attorney in fact, David H. Haffenreffer) and defendants William and Janet Coleman, friends of the Haffenreffer family, on October 29, 2002.

The Option Agreement provided the Colemans with the right to purchase certain parcels of real estate at the Haffenreffer compound in Little Compton (Seaconnet Farm) after the death of Carolyn Haffenreffer. The option extended only to parcels that no member of the

extended Haffenreffer family wished to retain. The purchase price prescribed by the Option Agreement was to be based on "fair market value to be determined by the average of three appraisals by accredited local real estate professionals". (Copy of Option Agreement attached as "Exhibit A" hereto). In this respect, Karl's claim is puzzling. He is seeking to invalidate an option on property that neither he nor any other family members want, and the option ensures that fair market value will be paid for the property.

The Colemans had been close to Carolyn Haffenreffer, her late husband Carl, her son David, and most of their family members. They had rented properties at Seaconnet Farm for many years and had been repeatedly promised an opportunity to purchase property there. Indeed, the opening paragraph of the Option Agreement states that it was intended "to formalize the 'gentlemen's agreement' option that has informally existed between our families for years." (id.). The Option Agreement was of benefit to Carolyn in that it reduced, clarified, and clearly defined the much more open ended '"gentlemen's agreement". It reduced the likelihood of future disputes (and potential litigation) over just what the Colemans' option rights were, and made clear (for Carolyn's benefit) that the option only applied to real estate at Seaconnet Farm that was designated to be sold under her will and that no Haffenreffer family member wanted to buy. It also established (for Carolyn's benefit) a three appraiser methodology for ensuring that the price the Colemans were required to pay was truly "fair market value". Hence, the Colemans contend, the option agreement involved a value-for-value exchange in that it made more precise (and more narrowly defined) the Colemans' option rights, all to the benefit of Carolyn's estate.

Carolyn B. Haffenreffer died in 2003. Her sons, David and Karl, are two of the three co-executors of her estate. They are also the primary beneficiaries of the estate. The third co-executor, Noel Field, is an attorney now or formerly affiliated with the firm of Hinckley,

Allen and Snyder. That firm is legal counsel for the estate.

Karl and David do not get along. This litigation is but one manifestation of the conflict. There is other litigation pending between them in Newport Superior Court involving the Seaconnet Farm properties.

Karl brought this action to void the option agreement, claiming that David lacked authority to enter into it and that it was void for lack of consideration. The case was not brought by the lawyers for Carolyn's estate because there was no desire by any person other than Karl to bring it. As set forth in the complaint (para. 17), the other two co-executors disagreed with Karl's opinion on the option agreement, so he has gone out on his own with this litigation, purporting to be acting "as a beneficiary of, and person legally interested in, the Estate", pursuant to R.I.G.L. §33-18-17. (id., Para. 4).

The Colemans also continued to rent properties at Seaconnet Farm in reliance on the Option's promise that they would some day have a chance to own one of the properties there. The claim that any alleged or perceived deficiency in consideration here is easily cured by the doctrine of equitable estoppel based on their detrimental reliance on the Option - and on Karl's failure to complain about it for several years after he knew all about it. In this regard the Colemans rely upon the doctrine of laches as well.

## CLAIMS AND DEFENSES AND CORRESPONDING ARGUMENT

### A. There Was Consideration For The Option

The Colemans' key contention is that the Option was in fact supported by consideration for the reasons just described above. Prior to the execution of the Option, their option rights to the real estate of the Haffenreffer family were somewhat ambiguous and uncertain in that they were based on letters and oral representations and assurances. There was no method established for determining how the family could be certain it was getting a "fair market value"

price, and it was not clear which one(s) of the Seaconnet Farm properties it could be asserted against. The possibility of some type of future litigation regarding these issues was distinct. The Option Agreement represented a value-for-value exchange in that it made precise (and more narrowly defined) the Colemans' option rights. This was of benefit to Carolyn at the time because it made clear that the option only extended to properties no other Haffenreffer family member wanted, and prescribed a clear method for establishing the option price and ensuring that true fair market value would be paid. More clearly defining the Option also reduced the likelihood of future disputes, uncertainty, and possible litigation over just what the Colemans' option rights were. Finally the option stated - on its face - that it was made "for good and valuable consideration exchanged between us, the receipt and sufficiency of which is hereby acknowledged."

It is well settled that a compromise of a contested claim - even a doubtful claim - is sufficient consideration to support an agreement. See, e.g., Carter v. Provo, 87 N.H. 369, 180 A. 258 (1935) (Compromise of alleged claim against estate by creditor with honest belief in its legal character held to constitute consideration for promise by executor. Wouldn't matter if no valid claim really existed); Cohen v. Sabin, 452 Pa. 447, 307 A.2d 845 (Pa. 1973); Pennsylvania State University v. University Orthopedics, 706 A.2d 863 (Pa. Super. 1998); Restatement of Contracts, 2d, §74; 1 Corbin, Contracts §§187-188; 6 id. §§1287-1290; 1 Williston, Contracts §§128-129, 135-137.

**B. Karl's Claim Is Barred By Laches**

The Colemans planned and lived important aspects of their lives in reliance on the Option from and after the time it was executed in November 9, 2002 up until the time Karl filed his suit in June of 2006. Karl had known about the Option for years and had done nothing to challenge it, rendering the doctrine of laches applicable as a defense. Motta v. Gouveia, 84 R.I.

149 (1956) (Laches is delay that works to the disadvantage of another).

**C. There Are No Issues Suitable For Submission to a Jury**

Although there does not appear to be any Rhode Island law on the issue, courts elsewhere in the region have held that a determination as to the adequacy of consideration is a question of law for the Court, not fact for a jury. Lloyd's Credit Corp. v. Marlin Management, 158 VT. 594, 614 A.2d 812 (1992); Davis & Warde, Inc. v. Trupodi, 616 A.2d 1384 (Pa. Super. 1992).

**DAMAGES**

The Complaint does not seek damages. Rather, it seeks declaratory relief.

**ISSUES**

1. Was the Option Agreement supported by consideration such as to be an enforceable contract?

2. If the Option Agreement was not supported by consideration, is Karl equitably estopped from asserting this alleged defect?

3. Is Karl's claim barred by laches based on his failure to timely challenge the Option Agreement notwithstanding his knowledge of it?

4. Are there any genuine jury issues in this case?

5. Karl has indicated that he intends to present expert testimony by an appraiser from Newport Appraisal Group. Presumably this expert will testify that the subject properties could more easily be marketed without the Option being in existence. If the Option is a duly enforceable contract, how would such testimony be relevant?

**PENDING MATTERS**

Karl's counsel had previously (on March 7, 2007) requested a conference with the Court to address the disposition of this case through summary judgment. The Court responded on March 23, 2007 to the effect that it would be inappropriate to conduct a summary judgment conference until a then-pending motion to disqualify counsel was resolved. This request has not been formally renewed, but it does appear that the core issue in the case is legal and could more efficiently be resolved by cross motions for summary judgment.

**ESTIMATED TIME OF TRIAL**

The Colemans will require one full day to present their case. Two full days should be required to litigate the entire case.

/ s/ William R. Landry
William R. Landry #2494
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, RI 02903-1765
Telephone: (401) 831-8900
Telecopy: (401) 490-7640

December 1, 2007

Attorneys for Defendants
William Coleman and Janet Coleman

CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2007, this document was filed electronically and is available for reviewing and downloading to the ECF registered counsel of record, as follows:

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Financial Plaza, Suite 1800
Providence, RI 02903

/ s/ William R. Landry